**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello**

Criminal Action No. 23-cr-00095-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. TERRY ROEBUCK,

    Defendant.

---

**ORDER DENYING IN PART
AND RESERVING RULING IN PART DEFENDANT'S MOTION *IN LIMINE***

---

This matter is before the Court on Defendant Terry Roebuck's Motion *in Limine* to Exclude Evidence Pursuant to F.R.E. 404(b). The Motion is fully briefed. *See* (Docs. ## 53, 58, 61.) For the following reasons, the Court denies the motion in part and reserves ruling in part.

### I.    BACKGROUND

**A. FACTS**

This case revolves around a Glock-brand pistol equipped with an auto-sear[1] found during a controlled purchase of illicit narcotics. On March 4, 2023, Aurora Police

---

[1] An auto-sear is an aftermarket part that converts a semi-automatic firearm into an automatic firearm.

Department (APD) Officer J. Henderson saw "ATG Inglewood,"[2] a Facebook account, post a video in a public group to indirectly advertise cocaine for sale. Four days later, an APD officer using an undercover Facebook account contacted ATG Inglewood on Facebook about buying cocaine. Officer Henderson next arranged to meet ATG Inglewood that evening at a warehouse in Aurora. Mr. Roebuck arrived around 6:35 PM in a 2006 Mercedes Benz, which APD officers then boxed in with their patrol cars and surrounded, weapons drawn. According to at least one APD officer, before Mr. Roebuck put his hands up, he "ditched a gun" later determined to be a Glock pistol modified by an auto-sear. (Doc. # 53 at 1–2.) APD arrested Mr. Roebuck on outstanding warrants.

On March 23, 2023, a federal indictment issued, charging Mr. Roebuck with violations of 18 U.S.C. §§ 924(c)(1)(A) and (B)(ii), 21 U.S.C. §§ 841(a0(1) and (b)(1)(C), and 18 U.S.C. §§ 922(g)(1) for, respectively, possession of a machine gun in furtherance of a drug trafficking crime, possession of a controlled substance with intent to distribute, and possession of a firearm or ammunition by a prohibited person. (Doc. # 3.) His trial begins on February 12, 2024. (Doc. # 38.)

B. PROCEDURAL HISTORY

Between January 5 and January 11, 2024, the government provided Mr. Roebuck two notices under Federal Rule of Evidence 404(b). The notices advised that the government intends to admit evidence obtained from Facebook—namely, fifteen Facebook interactions involving ATG Inglewood and three involving "TwoGang Brazy,"

---

[2] Mr. Roebuck has access to ATG Inglewood and concedes that "he was *one* operator" of the account. (Doc. # 61 at 14 n.11 (emphasis in original).)

another Facebook account that Mr. Roebuck allegedly controls. (Doc. # 53 at 2); *see generally* (Docs. ## 58-1 to 58-18) (proffered evidence). The proffered evidence falls into three categories: (1) third party posts in Facebook groups to which ATG Inglewood belonged, (2) ATG Inglewood's group messages, and (3) direct messages from one-on-one conversations that include ATG Inglewood or TwoGang Brazy. *E.g.*, (Doc. # 61 at 2–3.)

According to the notices, the government believes that none of this evidence is covered by Rule 404(b) because it is all "intrinsic to the crime charged," not an "other" crime, wrong, or act covered by the rule. *Id.* at 8 (first citing United States v. Parker, 553 F.3d 1309, 1314 (10th Cir. 2009), then citing United States v. O'Brien, 131 F.3d 1428, 1432 (10th Cir. 1997)). The notices alternatively state that, even if Rule 404(b) applies, said evidence remains admissible because it is offered for the limited purposes of showing Mr. Roebuck's knowledge, intent, absence of mistake, or lack of accident in possessing a firearm and drugs with the intent to sell. (Doc. # 53-1 at 8–9.)

In response to the notices, on January 24, 2024, Mr. Roebuck filed the instant motion *in limine*. (Doc. # 53.) In it, he moves under Rule 404(b) and Rule 403 to exclude all eighteen proffered exhibits. The government filed its response on February 1, 2024, to which Mr. Roebuck replied. *See* (Docs. ## 58, 61.)[3]

---

[3] At the final trial preparation conference on January 31, 2024, the Court ordered the government to file a response addressing Mr. Roebuck's arguments as well as the Court's own concerns about hearsay and the Confrontation Clause. This Court is satisfied with the government's explanation, especially given that Mr. Roebuck's reply does not make his own hearsay or Confrontation Clause objections. Consequently, the Court limits its discussion to Rule 404 and Rule 403.

## II.     STANDARD OF REVIEW

The purpose of a motion *in limine* is to aid the trial process by enabling the Court "to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *United States v. Cline*, 188 F. Supp. 2d 1287, 1291 (D. Kan. 2002) (internal quotation omitted). Pretrial rulings may save time at trial and save the parties time, effort, and cost in preparing their cases. *Id.* However, in many cases, such rulings are better left until trial when the Court can assess the question considering the evidence presented at trial. *Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1387–88 (D. Kan. 1998).

The moving party "has the burden of demonstrating that the evidence is inadmissible on any relevant ground." *Pinon Sun Condo. Ass'n, Inc. v. Atain Specialty Ins. Co.*, No. 17-cv-01595-CMA-NRN, 2020 WL 1452166, at *3 (D. Colo. Mar. 25, 2020) (quoting *First Sav. Bank, F.S.B. v. U.S. Bancorp*, 117 F. Supp. 2d 1078, 1082 (D. Kan. 2000)). Denial of a motion *in limine*, however, does not mean that all of the evidence contemplated by the motion will automatically be admitted at trial. *Id.* Rather, "the court may alter its limine ruling based on developments at trial or on its sound judicial discretion." *Id.* (quoting *First Sav. Bank*, 117 F. Supp. 2d at 1082). A ruling *in limine* does not "relieve a party from the responsibility of making objections, raising motions to strike, or making formal offers of proof during the course of trial." *Thweatt v. Ontko*, 814 F.2d 1466, 1470 (10th Cir. 1987).

### III. APPLICABLE LAW

#### A. RULE 404(b)

Rule 404(b) governs the admissibility of evidence of a defendant's other crimes, wrongs, or bad acts and bars admitting such evidence to prove "a person's character in order to show that on a particular occasion the person acted in accordance with the character." F.R.E. 404(b)(1). However, Rule 404(b) has two notable exceptions.

First, because the text of Rule 404(b) directs itself only to evidence that is extrinsic to the crime charged, as a threshold matter, the rule does not cover "intrinsic" evidence. *United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015). Intrinsic evidence refers to evidence that either (1) is "inextricably intertwined" with the charged conduct, (2) "occurred within the same time frame" as the allegedly criminal activity, (3) constituted a "necessary preliminary" to the crime charged, (4) produced direct proof of background information" directly connected to the crime's factual circumstances, or (6) equips the jury with necessary background and context of a defendant's relationship to his accomplice. *Id.* (citations omitted).

Second, extrinsic evidence can be admitted if offered for narrow purposes such as proving a defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). To invoke this exception, the proffering party must make four showings: (1) the evidence is offered for a proper purpose under Rule 404(b); (2) the evidence is relevant; (3) the evidence's probative value is not substantially outweighed by the potential for unfair prejudice; and (4) upon request, the court offers the jury a limiting instruction pursuant to Rule 105.

*See United States v. Henthorn*, 864 F.3d 1241, 1248 (10th Cir. 2017). In determining whether evidence is offered for a proper purpose, the district court must make a threshold determination that the proffered evidence is "'probative of a material issue other than character.'" *United States v. Martinez*, 890 F.2d 1088, 1093 (10th Cir. 1989) (internal quotation omitted). To show sufficient probativity, the proffering party must articulate a precise evidentiary hypothesis by which a fact of consequence can be inferred from the evidence of other acts. *United States v. Kendall*, 766 F.2d 1426, 1436 (10th Cir. 1985). A fact can become consequential when controverted by a defendant, such as the denial of an essential element like *mens rea*. *E.g.*, *United States v. Isabella*, 918 F.3d 816, 841 (10th Cir. 2019).

### B. RULE 403

Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury ......." Fed. R. Evid. 403.

### IV. ANALYSIS

As explained below, the Court concludes that the Government has satisfied its burden of showing that the proffered testimony is relevant and fits the chain of logical inferences explained in its notices. Mr. Roebuck's arguments to the contrary fail to persuade the Court otherwise.

### A. THRESHOLD ISSUE: EVIDENCE INTRINSIC TO THE CRIME

The Court first addresses whether Rule 404(b) applies before turning to the 404(b)(2) inquiry. The government maintains that Rule 404(b) does not affect its

6

proffered evidence because all eighteen exhibits are intrinsic to the crime. (Doc. # 53-1 at 1; Doc. # 58 at 6–7.) The government reasons that evidence of Mr. Roebuck "specifically seeking" Glock firearms and his "efforts to [buy] and sell auto-sears" is "directly connected to the crime[s]." (Doc. # 58 at 7.) Also, specific to the third party group posts, the government contends that Rule 404(b) does not apply because none of those posts are technically an "other act" by Mr. Roebuck. *E.g.*, (Doc. # 58 at 15–16 (citing *United States v. Alqahtani*, 523 F. Supp. 3d 1304, 1310 (D.N.M. 2021).) Mr. Roebuck disagrees, arguing that the proffered evidence must be extrinsic because it lacks any connection between the auto-sear-equipped handgun seized during his arrest and any of the guns or auto sears referenced in the proffered evidence. (Doc. # 53 at 6–16.)

The Court agrees with Mr. Roebuck. The charged crimes revolve around one specific firearm allegedly in Mr. Roebuck's possession at a discrete moment in time—as he was attempting to sell illicit substances. *See* (Doc. # 1-1 at 2–4.) The government offers no explanation as to why any gun, drum magazine, auto-sear, or drugs—besides those present at the scene of his arrest—relate to Mr. Roebuck's pending charges. *Cf. United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011) (holding that evidence of a prior drug prosecution was intrinsic to the crime of witness tampering because the defendant's motivation to target the witness formed due to the prior prosecution). Nor does the government meaningfully argue any of *Kupfer*'s six definitions of intrinsic evidence. None of this evidence is related to the crime charged. As for the *Alqahtani* argument, this Court notes that the *Alqahtani* Court cited nothing beyond Rule 404(b)

7

for its legal proposition that the rule excludes third party action complimented by a defendant's inaction. *Alqahtani*, 523 F. Supp. 3d at 1310. This Court does not read Rule 404(b) as narrowly—the text of the rule states without qualification that "[e]vidence of ***any*** other crime, ***wrong*** or act . . . may be admissible for" the narrow purposes listed in Rule 404(b)(2). Fed. R. Evid. 404(b)(2) (emphasis added). The rule mentions "wrongs," which can occur by omission. That alone casts doubt on *Alqahtani*'s reasoning.

Consequently, the Court finds that Rule 404(b) governs the admissibility of the proffered evidence, so the Court will turn next to Mr. Roebuck's 404(b) arguments.

### B. RULE 404(b)

Under Rule 404(b), Mr. Roebuck initially challenged all three categories of proffered evidence by arguing that the government had not articulated sufficient explanations to trigger Rule 404(b)(2). (Doc. # 53 at 10–15.) Once the government filed a response explaining how the proffered evidence can show Mr. Roebuck's knowledge, intent, absence of mistake, or lack of accident, he changed course. Now, via his reply, Mr. Roebuck argues that the proffered evidence must "reliably" show, *i.e.*, with proper authentication, that Mr. Roebuck actually possessed firearms on some occasion. (Doc. # 61 at 5–6.)

#### 1. Evidence of Third Party Facebook Posts

Mr. Roebuck moves to exclude proffered evidence of third parties' posts about Glocks and auto-sears in Facebook groups. He argues that, to be relevant, the proffered evidence must show that either Mr. Roebuck actually viewed, interacted with, or responded to any third party posts (Doc. # 53 at 7–10) or Mr. Roebuck actually

8

bought, sold, or possessed a gun or auto-sears (Doc. # 61 at 5–9). Because he claims the evidence cannot show either, he insists his mere membership in those groups does not create a sufficiently direct relationship to impute knowledge, absence of mistake, lack of accident, or intent to him. (Doc. # 53 at 7–10.)

Besides the already rejected *Alqahtani* argument, the government argues that circumstantial evidence shows Mr. Roebuck was "consistently active" on Facebook, thereby implying that he probably saw at least some of the third party posts. (Doc. # 58 at 16.) The government also submits that whether Mr. Roebuck viewed or responded to those third party posts is an issue of weight, not admissibility. *Id.*

Based on the information provided in the briefing and Mr. Roebuck's concession that he at least can access the ATG Inglewood account, the Court concludes that the admissibility of this evidence hinges on what happens at trial. The government's position necessarily depends on the conditional fact that Mr. Roebuck viewed the third party posts and, at this juncture, Mr. Roebuck offers no reason to doubt the government's ability to show that he did see the posts. *See generally* Fed. R. Evid. 104(b). Given that the possibility that the government can lay the proper foundation to establish the conditional relevancy of this evidence, the Court therefore reserves ruling on Mr. Roebuck's motion *in limine* with respect to the proffered third party group posting evidence.

2. ATG Inglewood's Group Messages

Mr. Roebuck next moves to exclude evidence of ATG Inglewood messaging Facebook group chats soliciting offers to buy "buttons," *i.e.*, auto-sears, and asking who

9

is selling Glock handguns. (Doc. # 61 at 7–9.) His reasoning is largely the same as above—the proffered evidence cannot be relevant unless it reliably shows that Mr. Roebuck actually bought, sold, or possessed a gun or auto-sears. (Doc. # 61 at 5–9).

In response, the government argues that this evidence is admissible to prove, *inter alia*, Mr. Roebuck knew what an auto-sear is or knew what a Glock handgun is. Further, because Mr. Roebuck specifically denies that he knowingly and intentionally possessed a machine gun or a firearm, the government submits that the proffered evidence can also show absence of mistake or lack of accident. (Doc. # 58 at 11–14.) For support, the government cites *United States v. Moran* and some of its progeny for the legal principle that evidence showing a defendant's prior firearm possession is relevant to show knowledge and intent of a subsequent firearm possession. (Doc. # 58 at 8–9 (collecting cases).)

The Court finds that the government has adequately articulated proper purposes for the use of this evidence and that the evidence is relevant—especially since Mr. Roebuck controverts the intent element of the two charged crimes involving firearms. Mr. Roebuck's criticism of *United States v. Moran*, though duly noted, involved a more troubling risk of propensity inferences than what is present here. *See United States v. Moran*, 503 F.3d 1135, 1143 (10th Cir. 2007) (admitting a defendant's prior conviction for knowingly possessing a firearm to prove that the defendant knowingly possessed one again in the future); *cf.* (Doc. # 58 at 10) (reasoning that ATG Inglewood's demonstrated knowledge of Glock firearm characteristics and auto-sears bears on whether the firearm found in the vehicle was, for example, there without his knowledge

10

or by accident). Thus, the Court denies the motion *in limine* with respect to ATG Inglewood's group messages.

### 3. Mr. Roebuck's Direct Messages

Finally, Mr. Roebuck moves to exclude the proffered evidence of his direct messages with other Facebook users about buying and selling Glocks and auto-sears. His reasons remain the same: the evidence must, in his view, reliably show that he actually possessed a firearm at some point in the past. (Doc. # 61 at 9.) The government, in turn, articulates several purposes for which this evidence could be admitted—motive, opportunity, knowledge, lack of accident, or absence of mistake. *E.g.*, (Doc. # 58 at 18.)

For the same reasons provided above, the Court is satisfied by the Government's response that finds that it intends to offer this evidence for a proper purpose and that said evidence is relevant. For instance, ATG Inglewood asking a third party about purchasing a "drum," *i.e.*, a drum magazine, could be offered to show that ATG Inglewood knows what a drum magazine is, which belies the possibility of carrying one unwittingly. Mindful that Mr. Roebuck concedes that he can at least access the ATG Inglewood account, the Court finds this factual basis sufficient. The motion *in limine* is therefore denied with respect to the direct messages.

### 4. Rule 403

Finally, Mr. Roebuck contends that even if all the proffered evidence is admissible under Rule 404(b), it must be excluded under Rule 403 because the risk of unfair prejudice outweighs its probative value. (Doc. # 53 at 16.) However, Rule 403

states that a court may exclude relevant evidence "if its probative value is **substantially outweighed** by a danger of . . . **unfair** prejudice." Fed. R. Evid. 403 (emphasis added). Though the Court is not without sympathy for his argument that jurors may use prior acts evidence to infer that he "is a bad person and . . . that if he did it before, he probably did it again," see *United States v. Clay*, 667 F.3d 689, 698 (6th Cir. 2012), "relevant evidence is inherently prejudicial." *United States v. Naranjo*, 710 F.2d 1465, 1469 (10th Cir. 1983) (quoting *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979)). Mr. Roebuck has not convinced the Court that this evidence will **unfairly** prejudice him. By contrast, the Court notes that this evidence—particularly ATG Inglewood's messages—have high probative value because they go directly to an element of the charged offense: whether Mr. Roebuck possessed the auto-sear-equipped Glock and whether he possessed the cocaine with the intent to distribute it. Further, the government clarified that it seeks a ruling on the proffered evidence's admissibility—it is not currently asking this Court to admit all eighteen exhibits. (Doc. # 58 at 26.) The government's acknowledgment minimizes the concern of unfair prejudice due to cumulativeness—although whether this remains so depends on what the government does at trial. (Doc. # 58 at 26.)

    Admissibility aside, the Court believes that a limiting instruction to the jury is prudent. The Court of Appeals for the Tenth Circuit condoned a limiting instruction in similar circumstances, see *United States v. Cherry*, 433 F.3d 698, 702 (10th Cir. 2005), and the Government does not oppose, see (Doc. # 58 at 26). The Court therefore directs both parties to confer and, by no later than **Friday, February 9**, jointly tender a

limiting instruction that the Court can give to the jury once the government moves to offer any of the Facebook data into evidence. The Court places the burden on Mr. Roebuck to remind the Court to give this instruction at the appropriate time.

## IV. **CONCLUSION**

For the foregoing reasons, it is ORDERED that Defendant's Motion *in Limine* is denied in part and ruling is reserved in part.

DATED: February 8, 2024

BY THE COURT:

*[signature]*
CHRISTINE M. ARGUELLO
Senior United States District Judge